UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

———————————————————————

Belinda B.,[1]

     Plaintiff,       Court File No. 20-cv-488 (JRT/LIB)

  v.          **REPORT AND RECOMMENDATION**

Andrew Saul,
Commissioner of Social Security,

     Defendant.

———————————————————————

  Plaintiff, Belinda B. (hereinafter "Plaintiff"), seeks judicial review of the decision of the Commissioner of Social Security ("Defendant") denying her application for disability benefits. This matter has been referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. This Court has jurisdiction over the claims pursuant to 42 U.S.C. § 405(g). Both parties submitted cross-motions for summary judgment, [Docket Nos. 14, 16], and the Court took the matter under advisement on the written submissions.

  For the reasons discussed below, the Court recommends that Plaintiff's Motion for Summary Judgment, [Docket No. 14], be **DENIED**, and that Defendant's Motion for Summary Judgment, [Docket No. 16], be **GRANTED**.

———————————————————————

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Order. Accordingly, where the Court refers to Plaintiff by her name only her first name and last initial are provided.

## I. Procedural History

On January 19, 2017, Plaintiff filed a Title II application for a period of disability and disability benefits. (Tr. 10).[2] Plaintiff alleged that her disability began on February 27, 2015. (Tr. 10). The Commissioner initially denied Plaintiff's present claims on June 1, 2017, and again, upon reconsideration, on November 1, 2017. (Tr. 10). On December 26, 2017, Plaintiff filed a written request for a hearing before an Administrative Law Judge. (Tr. 10, 110).

Administrative Law Judge Deborah Giesen (the "ALJ") conducted a video hearing on April 30, 2019. (Tr. 10, 35). Plaintiff was represented by legal counsel at the administrative hearing. (Tr. 10, 35). At the hearing, Plaintiff, through her legal counsel, requested to amend the alleged onset date to September 19, 2015. (Tr. 10, 36–37). Plaintiff and an impartial vocational expert ("IVE"), Glee Anne L. Kehr ("IVE Kehr"), testified at the hearing. (Tr. 10, 35–62). On June 4, 2019, the ALJ issued a decision denying Plaintiff's request for a period of disability and disability benefits. (Tr. 10–23). The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 11, 22–23).

Plaintiff thereafter sought review of the decision by the Appeals Council. (Tr. 1, 291). Subsequently, on January 7, 2020, the Appeals Council denied Plaintiff's request for review. (Tr. 1–5). Accordingly, the ALJ's decision became the final decision of the Commissioner. See, 20 C.F.R. §§ 404.981, 416.1481.

On February 11, 2020, Plaintiff filed the present action. (Compl. [Docket No. 1]).

---

[2] Throughout this Order, the Court refers to the Administrative Record, [Docket No. 13], by the abbreviation "Tr." The Administrative Record is consecutively paginated across 67 exhibits. (See, Administrative Record [Docket No. 13]). Where the Court cites to the Administrative Record, it refers to the page numbers found in the bottom-right corner of these exhibits.

## II.  Standards of Review

If a claimant's initial application for disability benefits is denied, she may request reconsideration of the decision. 20 C.F.R. §§ 404.907–404.909. A claimant who is dissatisfied with the reconsidered decision may then obtain administrative review by an administrative law judge. 42 U.S.C. § 405(b)(1); 20 C.F.R. § 404.929.

To determine the existence and extent of a claimant's disability, the ALJ must follow a five-step sequential analysis. This analysis requires the ALJ to make a series of factual findings regarding the claimant's impairments, residual functional capacity, age, education, and work experience. See, 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also, Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992). The Eighth Circuit has described this five-step process as follows:

> The Commissioner of Social Security must evaluate: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003).

If the claimant is dissatisfied with the ALJ's decision, she may request review by the Appeals Council, although the Appeals Council need not grant that request for review. See, 20 C.F.R. §§ 404.967–404.982. The decision of the Appeals Council (or, if the request for review is denied by the Appeals Council, then the decision of the ALJ) is final and binding upon the claimant, unless the matter is appealed to federal district court within sixty days after notice of the Appeals Council's action. See, 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.

In the present case, the Appeals Council declined to review the ALJ's decision finding that Plaintiff was not disabled, (Tr. 1–5), thus making the ALJ's decision effectively the final decision of the Commissioner.

Judicial review of the administrative decision generally proceeds by considering the decision of the ALJ at each of the five steps. Judicial review of the decision to deny disability benefits, however, is constrained to a determination of whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008); Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005); Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000) ("We may reverse and remand findings of the Commissioner [through the ALJ] only when such findings are not supported by substantial evidence on the record as a whole."). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Buckner, 213 F.3d at 1012 (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)); Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. Hilkemeyer v. Barnhart, 380 F.3d 441, 445 (8th Cir. 2004). The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence. Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994). The Court should not reverse the Commissioner's finding merely because evidence may exist in the administrative record to support the opposite conclusion. Milam v. Colvin, 794 F.3d 978, 983 (8th Cir. 2015); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

After balancing the evidence, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the Commissioner's decision [through the ALJ], the court must affirm the decision. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992). Thus, the court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008). The decision of the ALJ "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." Id. "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009) (quotation omitted).

The claimant bears the burden under the Social Security Act of proving that she is disabled. See, 20 C.F.R. § 404.1512(a); Whitman v. Colvin, 762 F.3d 701, 705 (8th Cir. 2014). Once the claimant has demonstrated she cannot perform prior work due to a disability, the burden then shifts to the Commissioner to show that the claimant retains the residual functional capacity ("RFC") to engage in some other substantial, gainful activity. Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005).

## III. Decision Under Review

Before beginning the five-step disability evaluation process in the present case, the ALJ first determined that Plaintiff met the insured status requirement of Social Security Act through December 31, 2020. (Tr. 12). This finding is not in dispute.

Thereafter, the ALJ made the following determinations during the five-step disability evaluation process.

At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since September 19, 2015, the amended alleged onset date. (Tr. 12). This finding is not in dispute.

At step two, the ALJ concluded that Plaintiff had "the following severe impairments: Degenerative disc disease of the cervical spine, status post-surgery; and degenerative disc disease of the lumbar spine." (Tr. 12). Plaintiff challenges the findings made by the ALJ at step two.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14). Specifically, the ALJ found that Plaintiff did not have any impairment or combination of impairments which met or medically equaled listing 1.04. (Tr. 14). Plaintiff does not challenge the ALJ's findings at step three.

At step four, the ALJ made the following RFC determination:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except occasional stooping, kneeling, crouching, crawling; no working around unprotected heights, open flames, or unprotected dangerous machinery; no climbing ladders, ropes, or scaffolds.

(Tr. 14). Plaintiff challenges this RFC determination made by the ALJ.

In making this RFC determination, the ALJ, considering the record as a whole, found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," however, the ALJ also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 15). Plaintiff challenges this credibility finding by the ALJ.

The ALJ found that Plaintiff was "unable to perform any past relevant work." (Tr. 21). Plaintiff does not challenge this finding.

Finally, at step five, the ALJ concluded that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 22). Relying upon testimony from IVE Kehr, the ALJ specifically found that among the occupations Plaintiff would be able to perform were "housekeeping" of which there are 660,000 positions in the national economy; "mail room clerk" of which there are 61,000 positions in the national economy; and "information clerk" of which there are 126,000 positions in the national economy. (Tr. 22). Other than implicit challenges based on Plaintiff's challenge of the ALJ's findings at steps two and four, Plaintiff does not challenge the ALJ's findings at step five.

Accordingly, the ALJ found that Plaintiff was not under a disability, as that term is defined by the Social Security Act, at any time during the adjudicated period. (Tr. 11, 22–23).

## IV. Analysis

Plaintiff asserts one general overarching issue on her appeal of the ALJ's decision: whether there is substantial evidence in the record, as a whole, to support the ALJ's RFC determination. (See, Plf.'s Mem. [Docket No. 16]). In support of her argument, Plaintiff proffers three assertions. First, Plaintiff asserts that the ALJ erred in improperly assessing the weight given to the opinion evidence. (See, Id. at 11–16, 23, 25–26). Second, Plaintiff asserts that the ALJ erred in improperly evaluating Plaintiff's subjective complaints of pain. (See, Id. at 17–21). Third, Plaintiff asserts a catchall argument and contends that the ALJ's RFC determination is not supported by substantial evidence due to several purported deficiencies. (See, Id. at 21–27).

"A claimant's RFC represents the most [s]he can do despite the combined effects of all of h[er] credible limitations and must be based on all credible evidence." McCoy v. Astrue, 648 F.3d 605, 614 (8th Cir. 2011); accord, 20 C.F.R. § 404.1545(a)(1). "A disability claimant has the burden

to establish h[er] RFC." <u>Eichelberger v. Barnhart</u>, 390 F.3d 584, 591 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." <u>Id.</u> at 591. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of a claimant's ability to function in the workplace. However, there is no requirement that an RFC finding be supported by a specific medical opinion." <u>Hensley v. Colvin</u>, 829 F.3d 926, 932 (8th Cir. 2016). "Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." <u>Perks v. Astrue</u>, 687 F.3d 1086, 1092 (8th Cir. 2012).

### A. Opinion Evidence

Plaintiff first argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ improperly weighed the opinion evidence. (Plf.'s Mem. [Docket No. 15], at 11–16, 23, 25–26). Specifically, Plaintiff argues that the opinions of Dr. Gretchen Grandgenett and Cheryl Sailer, OTR, CHT, should have been given more weight. (<u>See</u>, <u>Id.</u>). Plaintiff also argues that the opinions of the state agency consultants should have been given less weight because "they are not based on the entire medical record." (<u>See, e.g.</u>, <u>Id.</u> at 23).

### i. Dr. Gretchen Grandgenett

Plaintiff first argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ improperly discounted the opinions of Dr. Grandgenett, and Plaintiff contends that "Dr. Grandgenett's opinion should be adopted as it is not inconsistent with the medical evidence in the record." (<u>See</u>, <u>Id.</u> at 11–16).

"[A] treating physician's opinion is given 'controlling weight' if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the

other substantial evidence.'" Dolph v. Barnhart, 308 F.3d 876, 878 (8th Cir. 2002) (quoting 20 C.F.R. § 404.1527(d)(2)). However, a treating physician's opinion "do[es] not automatically control, since the record must be evaluated as a whole." Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995).

The Eighth Circuit has held that an ALJ may properly choose not to give controlling weight to the opinion of a treating physician when it is based solely on a claimant's subjective reports, or when the opinion is inconsistent with the treating physician's own treatment notes. Papesh v. Colvin, 786 F.3d 1126, 1132 (8th Cir. 2015). Even when a treating physician's opinion is not entitled to controlling weight, the opinion is typically entitled to substantial weight and should not ordinarily be disregarded without good reason. Miller v. Colvin, 784 F.3d 472, 477 (8th Cir. 2015).

However, an ALJ may properly choose to give the opinion of a treating physician no weight when it is inconsistent with the overall evidence in the medical record. Papesh, 786 F.3d at 1132. Further, "an ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Miller, 784 F.3d at 477 (quoting Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010)). A treating physician's opinion "on the issue(s) of the nature and severity" of an impairment is given controlling weight when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2).

An ALJ may also discount or even disregard a treating physician's medical opinion, and adopt the contrary medical opinion of a consulting physician, when the treating source's statements are conclusory, unsupported by medically acceptable clinical or diagnostic data, or when the ALJ's

determination is justified by substantial evidence in the record as a whole. See, Rogers v. Chater, 118 F.3d 600, 602 (8th Cir. 1997); Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir. 1991).

In other words, the ALJ is not required to believe the opinion of a treating physician when, on balance, the medical evidence convinces her otherwise. See, Wagner v. Astrue, 499 F.3d 842, 849 (8th Cir. 2007). Moreover, "opinions that a claimant is 'disabled' or 'unable to work' concern issues reserved to the Commissioner and are not the type of opinions which receive controlling weight." Vossen v. Astrue, 612 F.3d 1011, 1015 (8th Cir. 2010) (citing Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005)); see also, SSR 96-5p (July 2, 1996) ("Giving controlling weight to [treating source] opinions would, in effect, confer upon the treating source the authority to make" disability determinations). When an ALJ chooses not to give controlling weight to the opinion of a treating physician, the regulations require that they explain their reasons for doing so. See, 20 C.F.R. § 404.1527(c)(2).

Here, Dr. Grandgenett is a "treating source" because she is a doctor that treated Plaintiff. See, Lacroix v. Barnhart, 465 F.3d 881, 885–86 (8th Cir. 2006) (quoting 20 C.F.R. §§ 404.152, 416.902) ("A 'treating source' is defined as a 'physician, psychologist, or other acceptable medical source' who treats the claimant."). Dr. Grandgenett offered two opinions regarding Plaintiff's physical impairments. (Tr. 821–26). The first opinion was a check-box form dated June 4, 2018, (the "June 2018 Opinion"), and the second opinion is in the form of a "To Whom it May Concern" letter dated July 9, 2018 (the "July 2018 Letter").

In the check-box form June 2018 Opinion, Dr. Grandgenett stated that Plaintiff had "significant pain and weakness due to degenerative disc disease in her cervical spine and spinal stenosis in her lumbar spine." (Tr. 821). Dr. Grandgenett provided her opinions as to Plaintiff's

lifting limitations by checking boxes that indicate her ability to lift various amounts of weight[3] "floor to waist," "waist to shoulder," and "at or above shoulder" as "never," "occasional," or "frequent." (Tr. 822–23). Dr. Grandgenett opined by checking boxes that Plaintiff can never lift any weight "floor to waist" or "waist to shoulder." (Tr. 822–23). And Dr. Grandgenett opined by checking boxes that Plaintiff could occasionally lift less than 10 pounds but could never lift 10 pounds or more "at or above shoulder." (Id. at 823) Dr. Grandgenett further provided her opinions as to Plaintiff's hand movement limitations by checking boxes that indicate her abilities as "never," "occasional," or "frequent." (Id. at 824). Dr. Grandgenett opined by checking boxes that Plaintiff can occasionally "simple grasp," occasionally "power grasp," occasionally "finger/find manipulation," and never perform "repetitive hand movements." (Tr. 824).

Dr. Grandgenett also provided her opinions as to Plaintiff's ability to sit, stand, and walk in the form of fill-in-the-blank answers. (Tr. 823). Dr. Grandgenett opined that Plaintiff could sit 1 hour at a time, but she would require a standing break every 5 minutes and a walking break every 10 minutes. Dr. Grandgenett opined that Plaintiff could stand for 1 hour at a time, but she would require a break every 5 minutes. Dr. Grandgenett opined, without explanation, that Plaintiff had a "poor standing tolerance." And Dr. Grandgenett opined that Plaintiff could walk for 1 hour at a time, but she needs a break every 5 minutes. (Tr. 823).

In addition, Dr. Grandgenett opined that Plaintiff "is unable to work full time," "pain and weakness limit her ability to maintain static positions for any length of time," activity with her right hand is painful, that Plaintiff's conditions would get worse if she returned to full-time work, and that Plaintiff would miss "at least 5" days per month due to her physical condition. (Tr. 821–

---

[3] Specifically, the weights indicated are 100 pounds, 50 pounds, 20 pounds, 10 pounds, and less than 10 pounds. (Id.).

25). Dr. Grandgenett also indicated that Plaintiff does not have any limitations as a result of any prescription medications. (Tr. 824).

In the July 2018 Letter, Dr. Grandgenett simply stated in a conclusory manner: "It is my opinion that [Plaintiff] is unable to sit, stand or walk for a total of eight hours in an 8 hour work day." (Tr. 826). Dr. Grandgenett provided no elaboration or explanation in the July 2018 Letter. (See, Tr. 826).

After acknowledging that Dr. Grandgenett was Plaintiff's family care physician, the ALJ determined that the June 2018 Opinion was internally inconsistent with Dr. Grandgenett's own exam findings, as well as, Plaintiff's reported activities in the record as a whole, and the ALJ gave it "very limited weight." The ALJ clearly explained her reasons for that finding. (Tr. 20). The ALJ also found that the July 2018 Letter was inconsistent with the overall record for the same reasons, and she gave it "very limited weight." (Tr. 20–21). This Court's review of the record as a whole indicates that the ALJ's stated reasons for discounting the June 2018 Opinion and the July 2018 Letter are supported by substantial evidence.

As a preliminary matter, and as observed by the ALJ, this Court notes that Dr. Grandgenett's conclusions that Plaintiff "is unable to work full time" and "is unable to sit, stand or walk for a total of eight hours in an 8 hour work day" are in effect opinions that Plaintiff cannot work. (See, Tr. 822, 826). That decision is reserved for the ALJ. See, e.g., Vossen, 612 F.3d at 1015; Davidson v. Astrue, 578 F.3d 838, 842 (8th Cir. 2009); Daniel v. Saul, No. 17-cv-4322 (ECW), 2019 WL 4306353, at *9 (D. Minn. Sept. 11, 2019). Consequently, that portion of the June 2018 Opinion, as well as, the July 2018 Letter in its entirety "gets no deference because it invades the province of the Commissioner to make the ultimate disability determination." Engquist

v. Berryhill, No. 16-cv-3951 (TNL), 2018 WL 1413460, at *21 (D. Minn. Mar. 21, 2018) (quoting House v. Astrue, 500 F.3d 741, 745 (8th Cir. 2007)).

The ALJ noted that Dr. Grandgenett's 2018 June Opinion was internally inconsistent. (Tr. 20). Dr. Grandgenett opined by checking a box that the only lifting Plaintiff could do was occasionally lifting less than 10 pounds at or above her shoulders, however, Dr. Grandgenett also opined that Plaintiff could rarely reach over her head. (Tr. 20, 823–24). It is well established that "an ALJ may discount or even disregard the opinion of a treating physician . . . where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Miller, 784 F.3d at 477 (quoting Wildman, 596 F.3d at 964). These opinions conflict because to lift at or above the shoulders one would necessarily have to reach overhead.

The ALJ further noted several additional ways in which the June 2018 Opinion and the July 2018 Letter were inconsistent with the record as a whole. (See, Tr. 15–20). "The ALJ may reject the opinion of any medical expert where it is inconsistent with the medical record as a whole." Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); see also, Papesh, 786 F.3d at 1132.

For example, the ALJ found that the high level of functional limitations opined by Dr. Grandgenett were inconsistent with Plaintiff's reported activities. (Tr. 20). As observed by the ALJ, Plaintiff reported riding her motorcycle for an hour without pain, making 400 enchiladas with her family,[4] captaining a boat on Lake Michigan, riding on a tractor,[5] and rolling her own

---

[4] The Court notes that the ALJ stated Plaintiff made 400 enchiladas "for" her family, while the record reflects that Plaintiff reported making 400 enchiladas "with" her family. (Tr. 20, 533). Although this is arguably a slight misstatement by the ALJ, Plaintiff's participation in making enchiladas is nevertheless inconsistent with the level of impairment opined by Dr. Grandgenett, and it supports the ALJ's conclusion. See, e.g., Hepp v. Astrue, 511 F.3d 798, 806 (8th Cir. 2008) (quoting Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992)) ("[A]n 'arguable deficiency in opinion-writing technique' does not require us to set aside an administrative finding when that deficiency had no bearing on the outcome.").

[5] Notably, Plaintiff reported that the tractor was jerking which caused her low back pain. (Tr. 746, 752). However, the fact that Plaintiff reported being on a tractor at all is inconsistent with the level of limitations opined by Dr. Grandgenett.

cigarettes. (See, e.g., Tr. 47, 532, 547–48, 718, 746, 752). Plaintiff's medical records, including Dr. Grandgenett's own treatment notes, consistently report that Plaintiff exercises 3 times per week, including walking 3 miles on a treadmill and using a bowflex, and she wears a helmet when riding her motorcycle. (See, e.g., Tr. 566, 577, 656, 670, 688, 703, 711, 732, 737, 752).

Moreover, the ALJ observed that Plaintiff's household activities are inconsistent with the high level of functional limitations opined by Dr. Grandgenett. Specifically, the ALJ noted that Plaintiff is able to live alone, drive herself, cook for herself, clean, and shop. (Tr. 20). Plaintiff's ability to complete these activities is supported by the record. (See, e.g., Tr. 220–23 (reporting Plaintiff is able to do dishes, laundry, cook, sweep, mop, cook meals, yard work, shop in stores, and drive a boat); Tr. 242–44 (reporting Plaintiff is able to do dishes, laundry, light sweeping, weed whip with electric whipper, prepare meals daily, clean, and shop in stores for food and clothes); Tr. 533 (reporting Plaintiff had been "cleaning and cooking a lot"); Tr. 547–49 (reporting Plaintiff is not limited in activities of daily living, has "[n]o problems with anything at home," and is able to complete household activities including light cleaning with minimal pain); Tr. 873 (reporting Plaintiff lives alone in a house with stairs and is able to drive, cook, clean, shop, and do laundry). At the April 30, 2019, Hearing before the ALJ, Plaintiff reported that she could drive, use her phone to text, do laundry with assistance on the stairs sometimes, vacuum and sweep, and cook meals albeit without using the oven (Tr. 46, 50).

Several other records also conflict with Dr. Grandgenett's opinions. For example, Plaintiff's orthopedic surgeon, Dr. Amir Mehbod cleared Plaintiff to return to work in November 2015 with a 20-pound lifting restriction. (Tr. 301). Plaintiff's physical examinations have generally been unremarkable, with full strength, full or slightly decreased range of motion, and no neurological defects. (See, e.g., Tr. 15–21, 301, 303, 307, 311, 419, 638, 672, 722, 757, 794, 895,

926, 974, 1191, 1199, 1220, 1251). And, as explained below, Dr. Grandgenett's opinions are inconsistent with those of the state agency consultants, as well as, the ALJ's findings that Plaintiff "recovered relatively well after three cervical surgeries, with few deficits in physical functioning," and Plaintiff's "lumbar spine impairment was treated conservatively." (See, e.g., Tr. 15–21, 65–90).

In addition, the Court notes that Dr. Grandgenett's June 2018 Opinion and July 2018 Letter are conclusory. (See, Tr. 821–26). "[A] conclusory checkbox form has little evidentiary value when it 'cites no medical evidence, and provides little to no elaboration.'" Anderson v. Astrue, 696 F.3d 790, 794 (8th Cir. 2012) (quoting Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010)). Accordingly, an ALJ may properly discount the opinion of a treating provider that is conclusory or unsupported and contradicted by other evidence in the record. See, Rogers v. Chater, 118 F.3d 600, 602 (8th Cir. 1997); Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir. 1991).

Here, the June 2018 Opinion is conclusory. (See, Tr. 725–28). It consists entirely of vague, conclusory statements, checked boxes, and fill-in-the-blank answers. (See, Id.). The only reference to Plaintiff's medical records that Dr. Grandgenett provided in her June 2018 Opinion is a vague, general reference to the functional capacity evaluation completed by Cheryl Sailer, OTR, CHT. (Tr. 821). Similarly, Dr. Grandgenett's July 2018 Letter is wholly conclusory, as it consists of nothing more than an unexplained and unsupported statement that in Dr. Grandgenett's opinion, Plaintiff is not able to sit, stand, or walk for 8 hours in a workday. (Tr. 826).

For the reasons mentioned above, this Court finds that the ALJ's decision to discount Dr. Grandgenett's June 2018 Opinion and July 2018 Letter was supported by substantial evidence in the record.[6]

---

[6] Plaintiff generically contends that "[t]he ALJ failed to comply with 20 C.F.R. § 1527 by not considering the examining relationship, treatment relationship, length and frequency of examination, nature and extent of the treatment

Nevertheless, Plaintiff contends that the ALJ erred by relying on reports in Plaintiff's medical records, which Plaintiff contends are inaccurate, "taken out of context," "misleading," or "hearsay within hearsay," without first questioning Plaintiff about those specific records during the April 30, 2019, Hearing. (See, e.g., Plf.'s Mem. [Docket No. 15], at 13–14; Reply [Docket No. 21], at 1–6). However, to the extent Plaintiff simply argues that her medical records are unreliable and should not have been considered, Plaintiff's argument clearly fails. In making her RFC determination, "[t]he ALJ was entitled to consider all of the evidence in the record." Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005); see also, Stormo v. Barnhart; 377 F.3d 801, 807 (8th Cir. 2004) (quotations omitted) ("The ALJ should consider all evidence in the record . . . ."); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004) ("The ALJ determines a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations."); Zimmer v. Berryhill, No. 16-CV-3939 (PJS/BRT), 2018 WL 1183740, at *1 (D. Minn. Mar. 7, 2018) (rejecting argument "that hearsay statements in medical records cannot constitute substantial evidence").

Similarly, to the extent Plaintiff argues that the ALJ improperly failed to develop the record by specifically questioning Plaintiff about each and every record that the ALJ found was

---

relationship, supportability and consistency." (Plf.'s Mem. [Docket No. 15], at 15). An ALJ is required to consider the following factors in evaluating medical opinions: examining relationship; treatment relationship; supportability, consistency, specialization, and other factors. See, 20 C.F.R. § 1527(c). "The regulations do not require, however, that an ALJ exhaustively analyze how each of the relevant criteria in 20 C.F.R. § 404.1527(c) factored into her decision." Kuikka v. Berryhill, No. 17-cv-374 (HB), 2018 WL 1342482, at *5 (D. Minn. Mar. 15, 2018); see also, Jacob R. v. Saul, No. 19-cv-2298 (HB), 2020 WL 5642489, at *3 (D. Minn. Sept. 22, 2020) ("The ALJ is not required to explicitly discuss each and every factor, as long as she considers all the factors and gives good reasons for the weight assigned."). Here, the ALJ acknowledged that Dr. Grandgenett was Plaintiff's family care physician and that she had examined Plaintiff, which was sufficient to indicate the ALJ considered the examining relationship, treating relationship, and specialty of Dr. Grandgenett. See, Kuikka, 2018 WL 1342482, at *5 ("[T]he ALJ's description was sufficient to indicate that she took into account the treating/examining relationship of the medical sources, as well as their specialties."). The ALJ also considered the supportability and consistency of Dr. Grandgenett's opinions at length, and in doing so, as explained above, the ALJ gave good reasons for the weight assigned to those opinions. Therefore, this Court finds that the ALJ properly considered the 20 C.F.R. § 1527 factors.

inconsistent with Dr. Grandgenett's opinions and Plaintiff's representations, Plaintiff's argument also fails.

It is well settled "that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press h[er] case." Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010) (citing Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004)). "However, the burden of persuasion to prove disability and demonstrate RFC remains on the claimant." Id. (citing Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004)). An ALJ is not required to seek additional information "unless a *crucial issue* is undeveloped.'" Id. (emphasis in original) (quoting Stormo, 377 F.3d at 806). Thus, an ALJ is only required to obtain additional information if the evidence in the record presented to the ALJ does not "give sufficient medical evidence to determine whether the claimant is disabled." Halverson v. Astrue, 600 F.3d 922, 933 (8th Cir. 2010) (citing Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir. 1994)). Moreover, "reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." Twyford v. Comm'r Soc. Sec., 929 F.3d 512, 517 n.3 (8th Cir. 2019) (quoting Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)).

Here, Plaintiff points to several purported inaccuracies in the record and assumptions made by the ALJ, which she now contends should have been developed further by the ALJ. For example, Plaintiff asserts that the medical record stating that she captained a boat on Lake Michigan is inaccurate because she actually "dated a captain of the boat and had a ride on it," and Plaintiff contends ALJ erred by citing to that record without first inquiring at the April 30, 2019, Hearing into whether Plaintiff did in fact captain a boat on Lake Michigan. (Plf.'s Mem. [Docket No. 15], at 9, 13). However, Plaintiff indicated in a function report that she drives the boat while fishing, and regardless of whether she captained the boat on Lake Michigan or simply rode on it, that

activity is inconsistent with the high level of functional limitations opined by Dr. Grandgenett. (See, Tr. 223, 821–826). Plaintiff further asserts that she uses a machine to roll her own cigarettes, and she now contends that the ALJ erred by failing to specifically inquire into the process by which Plaintiff rolled her cigarettes before assuming that such an activity demonstrated Plaintiff's ability to handle and perform finger activities. (See, Plf.'s Mem. [Docket No. 15], at 10, 14). Nonetheless, Plaintiff could have herself explained how she rolled her cigarettes to the ALJ at the Hearing, but she chose not to do so. Also, the fact that Plaintiff is capable of rolling cigarettes at all, even using a machine, provides some evidence that she is less limited than opined by Dr. Grandgenett.

Accordingly, and upon reviewing the record as a whole, this Court does not find that any crucial issue is undeveloped, nor does this Court find that there is insufficient medical evidence to determine whether Plaintiff is disabled. See, Vossen, 612 F.3d at 1016; Halverson, 600 F.3d at 933. Moreover, this Court finds that any purported failure by the ALJ to further develop the record was not prejudicial to Plaintiff because Plaintiff had an opportunity to explain any inaccurate medical records at the April 30, 2019, Hearing, the records that Plaintiff now contends are inaccurate still provide support for the ALJ's decision to discount Dr. Grandgenett's opinions, and most importantly, the ALJ relied on a substantial amount of evidence that Plaintiff does not now contend was inaccurate. See, Twyford, 929 F.3d at 517 n.3.

In sum, Plaintiff is essentially asking this Court to reweigh the whole of the medical evidence and to come to a different conclusion than the ALJ, which this court cannot do. See, Milam, 794 F.3d at 983; Woolf, 3 F.3d at 1213. To the extent Plaintiff argues that there was also substantial evidence in the record that might have supported giving Dr. Grandgenett's opinions more weight, this Court may not reverse the ALJ simply because substantial evidence exists to support an opposite conclusion. See, Milam, 794 F.3d at 983. Nor can this Court substitute its own

18

judgment or findings of fact for those of the ALJ. See, Woolf, 3 F.3d at 1213. The Court "must consider evidence that both supports and detracts from the ALJ's decision," and it "must affirm the denial of benefits if 'it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings.'" See, Milam, 794 F.3d at 983 (citations omitted) (emphasis added). Such is the present case now before this Court.

Therefore, this Court finds Plaintiff's argument that the ALJ's RFC determination is not supported by substantial evidence because the ALJ improperly discounted the opinions of Dr. Grandgenett is unpersuasive in light of the record as a whole.

### ii.  Cheryl Sailer, OTR, CHT

Plaintiff also argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ improperly discounted the opinion of Cheryl Sailer, OTR, CHT, an occupational therapist, and Plaintiff contends that Ms. Sailer's opinions "should be given weight to show how Plaintiff's impairment affects her ability to function." (See, Plf.'s Mem. [Docket No. 15], at 12–16).

"Social Security separates information sources into two main groups: acceptable medical sources and other sources. It then divides other sources into two main groups: medical sources and non-medical sources." Sloan v. Astrue, 499 F.3d 883, 888 (8th Cir. 2007) (citing 20 C.F.R. §§ 404.1502, 416.902). "Social Security Ruling 06-3p clarifies how the SSA considers opinions from sources who are not what the SSA defines as 'acceptable medical sources.'" Pogue v. Colvin, No. 13-cv-4216, 2014 WL 5781141, at *18 (W.D. Mo. Nov. 6, 2014).

Plaintiff asserts, without explanation, that "Ms. Sailer is an 'acceptable medical source' pursuant to SSA 06-03p." (Plf.'s Mem. [Docket No. 15], at 12). However, Plaintiff is incorrect. As an occupational therapist, Ms. Sailer is considered an "other medical source." See, Sloan, 499

F.3d at 888 (noting that therapists were other medical sources); Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir. 2005) ("[A] therapist's assessment is considered 'other medical evidence.'"); Barros v. Astrue, No. 10-1339 (PJS/LIB), 2011 WL 2214928, at *12 n.5 (D. Minn. May 18, 2011) (alteration in original) ("Occupational therapists are not 'acceptable medical source[s]' under the Social Security Regulations.").

Although only "acceptable medical sources" can provide medical opinions, information from other sources, such as Ms. Sailer, may "provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." Sloan, 499 F.3d at 888; see also, Pogue, 2014 WL 5781141, at *18. Evidence provided by "other medical sources," such as Ms. Sailer, is to be considered by the ALJ. See, Raney, 396 F.3d at 1010. However, the ALJ is permitted to discount such other medical source evidence if it is inconsistent with other evidence in the record. See, Id. (citation omitted) ("In determining what weight to give 'other medical evidence,' the ALJ has more discretion and is permitted to consider any inconsistencies found within the record."). An ALJ may also discount such evidence if it is based on a plaintiff's subjective complaints which are themselves inconsistent with the record as a whole. See, Chesser v. Berryhill, 858 F.3d 1161, 1167 (8th Cir. 2017). Evidence provided by other medical sources may also be discounted if it is inconsistent with a plaintiff's demonstrated level of functioning. See, Lawson v. Colvin, 807 F.3d 962, 967 (8th Cir. 2015).

Social Security Ruling 06-03p provides six factors for the ALJ's consideration of opinion evidence from "other" sources: (1) how long and how frequently the source has seen the plaintiff; (2) how consistent the opinion is with other evidence on the record; (3) the amount of evidence provided to support the opinion; (4) how well the opinion is explained; (5) whether the source has a relevant specialty or area of expertise; and (6) any other factors. Sloan, 499 F.3d at 889.

20

"However, '[n]ot every factor . . . will apply in every case [and] [t]he evaluation of an opinion from another source depends on the particular facts of the case.'" <u>Dew v. Comm'r of Soc. Sec.</u>, No. 9-cv-1986, 2010 WL 3033779, at \*19 (D. Minn. July 9, 2010) (alteration in original), report and recommendation adopted by 2010 WL 3033772 (D. Minn. July 26, 2010).

Here, Plaintiff saw Ms. Sailer on May 17, 2018, for a functional capacity evaluation (the "FCE"). (Tr. 807–820). In the FCE, Ms. Sailer listed the findings of her physical examinations of Plaintiff, and she opined on Plaintiff's limitations. (Tr. 807–820). Ms. Sailer opined that Plaintiff was significantly limited in walking, lifting, carrying, implementing a normal pace, and maintaining positions due to pain and weakness, and Ms. Sailer concluded that Plaintiff was "[n]ot a candidate for return to work at this time due to significant physical limitations."[7] (Tr. 807, 809–10).

The ALJ determined that Ms. Sailer's opinions in the FCE were inconsistent with the physical exam findings within the FCE because the "opined limitations were based on [Plaintiff's] weakness and pain, however, physical exams fail to show any weakness in her lower or upper extremities." (Tr. 21). The ALJ further determined that Ms. Sailer's opinions in the FCE were inconsistent with Plaintiff's exam findings a month before the FCE, which "showed [Plaintiff's] extremities were normal, she had a full range of motion, and was neurologically intact, with 5/5 strength in all major muscle groups and intact sensation." (Tr. 21; <u>see also</u>, 895, 926, 974, 1191, 1199). In addition, the ALJ noted that Plaintiff's reported activities were inconsistent with the limitations opined by Ms. Sailer. Thus, the ALJ gave the FCE "very limited weight." (Tr. 21).

---

[7] The Court notes that Ms. Sailer's opinion that Plaintiff "[n]ot a candidate for return to work at this time" is in effect an opinion that Plaintiff cannot work. (<u>See</u>, Tr. 807). That decision is reserved for the ALJ. <u>See, e.g.</u>, <u>Vossen</u>, 612 F.3d at 1015; <u>Davidson</u>, 578 F.3d at 842; <u>Daniel</u>, 2019 WL 4306353, at \*9. Consequently, this portion of FCE "gets no deference because it invades the province of the Commissioner to make the ultimate disability determination." <u>Engquist</u>, 2018 WL 1413460, at \*21 (quoting <u>House</u>, 500 F.3d at 745).

For the following reasons, this Court finds that the ALJ's decision to the FCE very limited weight is supported by substantial evidence in the record. Ms. Sailer only examined Plaintiff on one occasion. (See, Tr. 807–20). After that examination, Ms. Sailer opined that Plaintiff is highly limited due to weakness and pain. (See, Tr. 807, 809–10). However, Ms. Sailer's opinion is contradicted by the results of her physical examination of Plaintiff which found Plaintiff's muscle strength was 5 in most areas and 4 in others. (See, Tr. 811–12). As discussed below, the ALJ also found that Plaintiff's subjective reports of pain were inconsistent with the record. (See, e.g., Tr. 15, 19).

Similarly, Ms. Sailer's opinion is inconsistent with Plaintiff's many physical examinations which have been unremarkable, and indicate full strength, full or slightly decreased range of motion, and no neurological defects. (See, e.g., Tr. 15–21, 301, 303, 307, 311, 419, 638, 672, 722, 757, 794, 895, 926, 974, 1191, 1199, 1220, 1251). Ms. Sailer's opinion is also inconsistent with Plaintiff's activities, which include boating, rolling her own cigarettes, exercising on a treadmill and bowflex, cooking, cleaning, shopping, and driving. (See, e.g., 46, 50, 220–23, 242–44, 532–33 547–49, 566, 577, 656, 670, 688, 703, 711, 718, 732, 737, 746, 752, 873).

In addition, Ms. Sailer's opinions in the FCE are inconsistent with Dr. Mehbod's clearance for Plaintiff to return to work in November 2015 with a 20-pound lifting restriction, the opinions of the state agency consultants, and the ALJ's finding that Plaintiff "recovered relatively well after three cervical surgeries, with few deficits in physical functioning," as well as, that Plaintiff's "lumbar spine impairment was treated conservatively." (See, Tr. 15–21, 65–90, 301).

To the extent Plaintiff argues that there is also substantial evidence in the record that could support giving more weight to Ms. Sailer's opinion, this Court again notes that it may not reverse the ALJ simply because substantial evidence may also support an opposite conclusion. See, Milam,

794 F.3d at 983. Plaintiff is essentially asking this Court to reweigh the medical evidence and to simply reach a different conclusion than the ALJ, which the Court may not do. See gen., Milam, 794 F.3d at 983; Woolf, 3 F.3d at 1213; see also, Kirby, 500 F.3d at 709 ("It is the function of the ALJ to weigh conflicting evidence and to resolve disagreements among physicians.").

As such, this Court concludes that it was within the ALJ's discretion to find that Ms. Sailer's opinions in the FCE were entitled to only "very limited weight." See, e.g., Chesser, 858 F.3d at 1167; Lawson, 807 F.3d at 967; Raney, 396 F.3d at 1010.

Therefore, this Court finds Plaintiff's argument that the ALJ's RFC determination is not supported by substantial evidence because the ALJ improperly discounted the opinion of Cheryl Sailer, OTR, CHT, an occupational therapist, is unpersuasive in light of the record as a whole.

### iii. State Agency Consultants

Plaintiff further argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ erred in giving the opinions of the state agency consultants significant weight. (See, Plf.'s Mem. [Docket No. 15], at 23, 25). Specifically, Plaintiff contends that the opinions of the state agency consultants should have been given less weight because "they are not based on the entire medical record." (Id. at 23).

Although the opinions of consultative examiners, non-examining testifying experts, and non-examining State Agency consultants may not constitute substantial evidence on their own, an ALJ does not err when she relies on these opinions and they are supported by the rest of record. See, Turpin v. Colvin, 750 F.3d 989, 994 (8th Cir. 2014); Johansen v. Astrue, No. 10-2076 (DWF/SER), 2011 WL 4583831, at *13 (D. Minn. Aug. 15, 2011), report and recommendation adopted by 2011 WL 4583828 (D. Minn. Sept. 30, 2011); Nelson v. Astrue, No. 06-4298 (DWF/SRN), 2008 WL 822157, at *17 (D. Minn. Mar. 26, 2008).

Courts have routinely upheld ALJ decisions that give significant weight to the opinions of consultative examiners, testifying experts, and state agency consultants when the ALJ's decision to do so is supported by substantial evidence in the record. See, e.g., Franks v. Colvin, No.13-2904 MJD/FLN, 2014 WL 6911291, at *13 (D. Minn. Dec. 8, 2014) (finding the ALJ did not err by giving "significant weight" to a one-time consultative examiner); Johansen, 2011 WL 4583831, at *14 ("[T]he ALJ did not err by giving 'significant weight' to the opinions of the state agency consultants"); Nelson, 2008 WL 822157, at *17 (finding the ALJ did not err by giving the opinion of a testifying medical expert "great weight").

Here, the state agency consultants provided opinions as to Plaintiff's functional capacity on May 3, 2017, and November 1, 2017. (Tr. 65–90). In those opinions, the state agency consultants opined that Plaintiff had the functional capacity to perform a reduced range of light work, and the state agency consultants concluded that Plaintiff was not disabled. (Tr. 71–74, 85–90). The state agency consultants also opined that Plaintiff's fingering (fine manipulation) ability was limited in both hands. (Tr. 72, 87). The ALJ found that the limitations opined by the state agency consultants "are supported by the medical record of evidence, including records subsequent to such opinions," and the ALJ gave those opinions "significant weight." (Tr. 20) (emphasis added). However, the ALJ found that the fingering limitations opined by the state agency consultants were not supported by the record. (Tr. 20).

In support of her argument that the opinions of the state agency consultants should have been given less weight, Plaintiff proffers two assertions. First, Plaintiff asserts that the state agency consultants' "opinions cannot be given significant weight because they are no [sic] based upon the entire medical record and cannot be relied on to constitute substantial evidence to support a light RFC." (Plf.'s Mem. [Docket No. 15], at 23). Second, Plaintiff asserts that "[t]he ALJ relied solely

24

on the opinions of [the state agency] consultants to support her finding that Plaintiff can do light work." (Id. at 25). However, both of Plaintiff's assertions are without merit.

"[A]n ALJ may embrace a state agency psychological consultant's opinion even if it was made before the record was fully developed." Kuikka v. Berryhill, No. 17-cv-374 (HB), 2018 WL 1342482, at *10 (D. Minn. Mar. 15, 2018). "An ALJ may also assign significant weight to the opinion of a state agency medical consultant who did not have access to all of the records, so long as the ALJ conducts an independent review of the evidence and takes into account portions of the record the consultant had not considered." Id.; accord, Lilja v. Berryhill, No. 16-cv-540 (TNL), 2017 WL 1183977, at *25 (D. Minn. Mar. 29, 2017).

The ALJ did not rely solely on the opinions of the state agency consultants in making her RFC determination. That fact is clearly demonstrated by the ALJ's many references to Plaintiff's specific medical records that both predate and postdate the state agency consultants' opinions. (See, Tr. 14–21). Indeed, the ALJ expressly stated that she considered the records subsequent to the state agency consultant's opinions. (Tr. 20). Therefore, there was nothing improper about the ALJ's decision to give significant weight to the state agency consultants' opinions despite having been rendered before the record was fully developed, and Plaintiff's assertions to the contrary fail. See, e.g., Kuikka, 2018 WL 1342482, at *10; Lilja, 2017 WL 1183977, at *25.

The ALJ supported her decision to give significant weight to the state agency consultants' opinions by noting that they were consistent with Plaintiff's many physical exams that showed a minimal loss of functioning, as well as, Plaintiff's reported activities. (Tr. 20). Accordingly, this Court finds that the ALJ's decision to give the opinions of the state agency consultants significant weight is supported by substantial evidence in the record. (See, e.g., Tr. 46, 50, 220–23, 242–44,

301, 303, 307, 311, 419, 532–33 547–49, 566, 577, 638, 656, 670, 672, 688, 711, 718, 722, 732, 737, 746, 752, 757, 794, 873, 895, 926, 974, 1191, 1199, 1220, 1251).

Therefore, this Court finds Plaintiff's argument that the ALJ's RFC determination is not supported by substantial evidence because the ALJ erred in giving the opinions of the state agency consultants significant weight is unpersuasive in light of the record as a whole.

### B. Subjective Complaints

Next, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ erred "in failing to properly evaluate Plaintiff's subjective complaints of pain as set forth in 20 [C.F.R.] § 404.1529 and SSR 16-3p." (Plf.'s Mem. [Docket No. 15], at 17–21).

An ALJ should evaluate a claimant's subjective symptoms based on all of the evidence in the record. See, Michael R. v. Berryhill, 18-cv-241-NEB-KMM, 2019 WL 5149978, at *9 (D. Minn. June 11, 2019), report and recommendation adopted by 2019 WL 4233852 (D. Minn. Sept. 6, 2019). Pursuant to 20 C.F.R. § 404.1529(c)(3), an ALJ should consider the following factors: (i) the claimant's daily activities; (ii) location, duration, frequency, and intensity of pain and other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of medications taken by the claimant to alleviate pain and other symptoms; (v) treatment, other than medication, that has been received by the claimant for relief of pain or other symptoms; (vi) other measures used by the claimant to relieve pain and other symptoms; and (vii) other factors concerning the claimant's functional limitations and restrictions due to pain and other symptoms. "These factors are essentially the same as those identified by the Eighth Circuit as relevant to evaluating a claimant's credibility." Michael R., 2019 WL 5149978, at *9; see also, Shultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007); Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984).

An ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.'" Social Security Ruling 16-3p, 2016 WL 1119029, at *9. Nevertheless, the ALJ is not required to explicitly discuss each factor. Goff v. Barnhart, 421 F.3d 785, 791 (8th Cir. 2005); Michael R., 2019 WL 5149978, at *10. "The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole." Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000) (citing Polaski, 739 F.2d at 1322). Where the ALJ's credibility determination is supported by good reasons and substantial evidence in the record as a whole, the Court is bound to accept the credibility determination of the ALJ. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005) (citing Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003)); see also, Juszczyk v. Astrue, 542 F.3d 626, 632 (8th Cir. 2008).

Plaintiff asserts that "[t]he ALJ practically makes no mention regarding Plaintiff's complaints of pain." (Plf.'s Mem. [Docket No. 15], at 17). Plaintiff also asserts that "[t]he ALJ summarily states that she recovered from her three surgeries with minimal loss of function . . . ." (Id. at 21). However, in making her assertions, Plaintiff focuses exclusively on two lines of the ALJ's decision. (See, Id. at 17). In doing so, Plaintiff misrepresents the ALJ's analysis.

At the outset of the ALJ's step four analysis, the ALJ set forth the relevant standard, and the ALJ noted that Plaintiff "alleges disability due to headaches, neck and back pain." (Tr. 14–15). The ALJ further noted that "[s]uch pain goes down to the hips and into the left leg," and Plaintiff "alleges that her physical impairments prevent her from standing, sitting, or walking for long periods of time." (Tr. 15). The ALJ continued by listing Plaintiff's alleged symptoms and

impairments. Many of which, the ALJ expressly attributed to Plaintiff's subjective allegations of pain. (See, Tr. 15).

Immediately thereafter, the ALJ stated that, after careful consideration, Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 15). The ALJ summarized her findings by stating that "a reduced range of light work is supported by evidence showing that [Plaintiff] recovered relatively well after three cervical surgeries, with few deficits in physical functioning. Similarly, [Plaintiff's] lumbar spine impairment was treated conservatively, without surgical intervention." (Tr. 15). In addition, the ALJ noted that "[m]edical imaging showed minimal deficits in [Plaintiff's] cervical and lumber spines, and physical exams overall showed normal gait, full strength in all extremities, and no neurological deficits." (Tr. 15). Subsequently, the ALJ articulated the reasons for those findings in detail.[8] (See, Tr. 16–19).

The ALJ considered the record as a whole and explained her reasons for determining that Plaintiff "recovered relatively well after three cervical surgeries, with few deficits in physical functioning," as well as, that Plaintiff's "lumbar spine impairment was treated conservatively." (See, Tr. 15–20). A conservative treatment plan is evidence that a claimant's symptoms are not as severe as alleged. See, e.g., Hamman v. Berryhill, 680 F.App'x. 493, 495 (8th Cir. 2017); Milam v. Colvin, 794 F.3d 978, 985 (8th Cir. 2015); Bauer v. Soc. Sec. Admin., 734 F. Supp. 2d 773, 806 (D. Minn. 2010); LaCanne v. Massanari, No. 00-2339 ADM/JMM, 2001 WL 1640124, at *2 (D.

---

[8] The ALJ reiterated near the end of that analysis that "[a]s for [Plaintiff's] statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because the record shows that the claimant recovered from each of her cervical spine surgeries with minimal loss of function. [Plaintiff's] lumbar spine impairment was treated conservatively, without surgical intervention." (Tr. 19). Plaintiff's argument focuses exclusively on those two lines.

Minn. July 30, 2001). "A failure to follow a recommended course of treatment also weighs against a claimant's credibility." Wagner v. Astrue, 499 F.3d 842, 851 (8th Cir. 2007) (quoting Guilliams v. Barnhart, 393 F.3d 798, 802 (8th Cir. 2005)). Moreover, "[a]n impairment which can be controlled by treatment or medication is not considered disabling." Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); accord, Turpin v. Colvin, 750 F.3d 989, 993 (8th Cir. 2014).

The ALJ noted that following Plaintiff's cervical surgery in May 2015, physical exams showed minimal defects. (Tr. 16; see also, Tr. 305–06). Dr. Mehbod indicated that Plaintiff's "right arm pain has significantly improved," and "[s]he has been very active and walking a lot." (Tr. 305). Plaintiff "further improved with physical therapy." (Tr. 16, see also, Tr. 515–534, 547–549). Indeed, despite being recommended for 12 physical therapy sessions, Plaintiff was discharged after only having attended 5 sessions because she had already met all of her short-term goals. (Tr. 519, 547–49). Upon her discharge from physical therapy, Plaintiff reported that "she is not limited in driving her motorcycle or in activities of daily living." (Tr. 547).

Six months after surgery, Dr. Mehbod cleared her to return to work with a lifting restriction of no more than 20 pounds. (Tr. 301). Plaintiff's x-rays showed bone grafts and instrumentation were in a good position, and physical exams continued to be unremarkable following Plaintiff's May 2015 surgery. (See, Tr. 16; see also, Tr. 299, 301, 303). Dr. Mehbod's treatment notes also indicate that Plaintiff's pain improved. (See, Tr. 303 ("She is doing really well with regards to her arm symptoms and numbness and tingling."); Tr. 301 ("She is doing very well. Her arm pain is significantly improved. She still has some trouble swallowing, but overall is feeling great.").

Nevertheless, the ALJ observed that Plaintiff developed dysphagia following the May 2015 surgery, which led to a second surgery to have an anterior cervical plate removed. (Tr. 16, see also, Tr. 315). Following that surgery, Plaintiff reported a "significant reduction" in her dysphagia. (Tr.

16; see also, Tr. 297). More than a year after Plaintiff's second surgery, Dr. Mehbod indicated that Plaintiff's swallowing had gotten a lot better. (Tr. 794).

The ALJ noted that in June 2017, Plaintiff "alleged pain in her low back, hips, and left leg," but "she declined to avail herself of conservative treatment recommendations." (Tr. 17). At that time, Plaintiff was strongly encouraged to attend physical therapy for her lumbar pain. (Tr. 17; see also, Tr. 750). Although Plaintiff continued to receive referrals to physical therapy for her pain, she declined to attend and instead opted to see a chiropractor. (See, Tr. 17; see also, Tr. 757, 760, 865). Plaintiff reported that chiropractic treatment was of minimal benefit, but still did not pursue physical therapy. (See, Tr. 766, 782, 794). As already noted, the record demonstrates that physical therapy was very effective when Plaintiff pursued that option previously. (See, e.g., Tr. 547–49).

In February 2018,[9] Plaintiff finally attended physical therapy for her reported lumbar pain. (Tr. 18; see also, Tr. 1338–1343). Although it was recommended that Plaintiff attend physical therapy twice per week for 90 days, Plaintiff never scheduled a second session. (See, Tr. 1340, 1345). Plaintiff was also recommended to attend an active rehabilitation program twice per week. (Tr. 18; see also, Tr. 1336). The recommending doctor noted that "[p]rognosis for improvement in this patient is good." (Tr. 1336). Plaintiff did not pursue this recommended treatment. (Tr. 18).

In April 2018, Plaintiff declined to pursue surgery on her lumbar spine and instead opted for steroid injections. (Tr. 18; see also, Tr. 868). In May 2018, Plaintiff was instructed to obtain an MRI before surgery on her lumbar spine was considered, but Plaintiff did not obtain the MRI. (Tr. 18, see also, Tr. 1357).

---

[9] The Court notes that the record is somewhat ambiguous on when this physical therapy session occurred. It appears to have occurred on February 8, 2018, based on the visit date indicated on physical therapy evaluation notes. (See, Tr. 1338). However, the subsequent physical therapy discharge notes indicate that Plaintiff attended 1 session on January 8, 2019, and the ALJ stated in her decision that Plaintiff attended one session of physical therapy in January 2018. (See, Tr. 18, 1345). Regardless, this minor discrepancy in the record has no impact on the ALJ's overall analysis or findings.

In December 2018, the ALJ observed that Plaintiff had a third cervical surgery. (Tr. 18; see also, Tr. 1349–50). Following that surgery, it was noted that Plaintiff "[wa]s doing very well," her "bone graft and instrumentation was in good position," and she had "some neck pain, but no more radicular pain." (Tr. 1346–47, see also, Tr. 18). Her physical exam showed "5/5 strength upon shoulder abduction, biceps, triceps, wrist extension and flexion, and intrinsics," and "the record is devoid of any post-surgery limitations imposed by [Plaintiff's] orthopedic surgeon." (Tr. 18; see also, Tr. 1347). Plaintiff later reported dysphagia, neck pain, and left shoulder pain. (Tr. 18; 1366). However, the ALJ observed that a physical exam showed Plaintiff was neurologically intact with normal strength, and cervical x-rays indicated that her hardware continued to be in good placement with no sign of failure or loosening. (Tr. 18; see also, Tr. 1367).

In addition, the ALJ noted throughout her analysis that records showed Plaintiff received some relief from her symptoms, including pain, through medications, injections, exercises, and other treatment. (See, Tr. 16–20). The ALJ's findings are supported by numerous records. (See, e.g., Tr. 305, 328 (reporting 90% pain reduction after nerve root block); Tr. 404 ("[R]ecent course of prednisone was somewhat effective in pain relief."); Tr. 580 (reporting leg pain but "[n]o low back pain"); Tr. 752 ("She has had some benefit from prednisone, Zanaflex, Norco."); Tr. 782 (reporting Medrol and Dosepak were "somewhat beneficial" and Zanaflex was "extremely helpful"); Tr. 794 (reporting that Plaintiff received steroid injections and oral steroids and has gotten 80% better, and "[s]he is to the point that she is really close to her baseline"); Tr. 842 (reporting a lumbar epidural steroid injection was successful, and Plaintiff's pain was reduced from 4/10 before the injection to 2/10 after the injection).

The ALJ also noted that Plaintiff's subjective reports of pain were inconsistent with her many physical exams that showed a minimal loss of functioning, as well as, Plaintiff's reported

activities. (<u>See, e.g.</u>, Tr. 46, 50, 220–23, 242–44, 301, 303, 307, 311, 419, 532–33 547–49, 566, 577, 638, 656, 670, 672, 688, 711, 718, 722, 732, 737, 746, 752, 757, 794, 873, 895, 926, 974, 1191, 1199, 1220, 1251).

For the foregoing reasons, this Court finds that the ALJ's evaluation of Plaintiff's subjective complaints of pain is supported by substantial evidence in the record. <u>See, e.g.</u>, <u>Hamman</u>, 680 F.App'x. at 495; <u>Milam</u>, 794 F.3d at 985; <u>Turpin</u>, 750 F.3d at 993; <u>Estes</u>, 275 F.3d at 725; <u>Bauer</u>, 734 F. Supp. 2d at 806; <u>LaCanne</u>, 2001 WL 1640124, at *2.

To the extent Plaintiff argues that there is also substantial evidence in the record that could support giving more weight to Plaintiff's subjective complaints of pain, this Court again notes that it may <u>not</u> reverse the ALJ simply because substantial evidence may also support an opposite conclusion. <u>See</u>, <u>Milam</u>, 794 F.3d at 983; <u>see also</u>, <u>Jusczyk</u>, 542 F.3d at 632 (quoting <u>Greg v. Barnhart</u>, 354 F.3d 710, 714 (8th Cir. 2003)) ("If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination."); <u>Guilliams</u>, 393 F.3d at 801 (citation omitted) ("We do not re-weigh the evidence presented to the ALJ, and we defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence.").

Therefore, this Court finds Plaintiff's argument that the ALJ's RFC determination is not supported by substantial evidence because the ALJ erred in evaluating Plaintiff's subjective complaints of pain is unpersuasive in light of the record as a whole.

### C.  RFC Determination

Finally, Plaintiff asserts a catchall argument and contends that the ALJ's RFC determination is not supported by substantial evidence due to several purported deficiencies. (<u>See</u>, Plf.'s Mem. [Docket No. 15], at 21–27).

As already noted, "[a] claimant's RFC represents the most [s]he can do despite the combined effects of all of h[er] credible limitations and must be based on all credible evidence." McCoy v. Astrue, 648 F.3d 605, 614 (8th Cir. 2011); accord, 20 C.F.R. § 404.1545(a)(1). "A disability claimant has the burden to establish h[er] RFC." Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).

In support of her catchall argument, Plaintiff reasserts most, if not all, of the arguments addressed above. (See, Id.). However, because this Court has already addressed those arguments, it is not necessary to do so again here. To the extend Plaintiff's catchall argument relies on those already-asserted arguments, it is unpersuasive. See, supra.

Plaintiff asserts, without further articulation, that "[t]he ALJ makes no mention of lumbar discogenic pain syndrome and impinging of the L4 nerve root." (Plf. 's Mem. [Docket No. 15], at 21) (citing Tr. 1335, 1337). The findings that Plaintiff refers to are based on reviews of the July 2017 MRI of Plaintiff's lumbar spine. (See, Tr. 1335, 1357). However, the ALJ discussed the results of Plaintiff's July 2017 MRI in her decision, the ALJ considered Plaintiff's subjective reports of lumbar pain, and the ALJ listed degenerative disc disease of the lumbar spine as a severe impairment. (See, Tr. 12–20). The ALJ also referenced the specific records that Plaintiff now cites. (Tr. 18). In one of those records, it was recommended that Plaintiff enroll in an active rehabilitation program, and in the other, Plaintiff was instructed to obtain an MRI before surgery on her lumbar spine was considered. (See, Tr. 1336, 1357). As already noted, Plaintiff did not attend active rehabilitation, nor did she obtain the MRI. Moreover, the ALJ's "failure to cite specific evidence does not indicate that it was not considered." Craig, 212 F.3d at 436; see also, Renstrom, 680 F.3d at 1065; McCoy, 648 F.3d at 615. Accordingly, to the extent that Plaintiff's catchall argument relies on this assertion, it is unpersuasive.

Plaintiff next asserts, without further explanation, that "[t]he ALJ found that bilateral carpal tunnel syndrome; status post-surgery was not a severe impairment even though it is well established by medical findings and [Plaintiff's] testimony that her hands were only 20% better after surgery." (Plf.'s Mem. [Docket No. 15], at 22). However, the ALJ considered Plaintiff's carpal tunnel syndrome and clearly explained her reasons for finding that it was not a severe impairment. (See, Tr. 13). Specifically, the ALJ noted that Plaintiff's medical records show her carpal tunnel symptoms improved following her surgeries, and the ALJ further noted that "there is no ongoing follow-up, including electromamograms (EMGs), of the upper extremities, and no documented reoccurrence of symptoms due to carpal tunnel." (Tr. 13). These findings are supported by the record. (See, e.g., Tr. 651, 691–92, 721–11, 730).

The ALJ also noted that Plaintiff's many physical exams that showed a minimal loss of functioning, as well as, Plaintiff's reported activities support the ALJ's finding that Plaintiff's "bilateral carpal tunnel release is nonsevere." (See, e.g., Tr. 46, 50, 220–23, 242–44, 301, 303, 307, 311, 419, 532–33 547–49, 566, 577, 638, 656, 670, 672, 688, 711, 718, 722, 732, 737, 746, 752, 757, 794, 873, 895, 926, 974, 1191, 1199, 1220, 1251). Moreover, as explained above, the ALJ's decision to discount Plaintiff's subjective reports of pain and other symptoms is supported by substantial evidence. See, supra. Therefore, to the extent that Plaintiff's catchall argument relies on this assertion, it is unpersuasive.

Lastly, Plaintiff asserts that "[t]he ALJ found no hand restrictions even though her hand limitations are well supported by the medical evidence and [Plaintiff's] testimony," and "[t]he ALJ did not find that claimant had any restrictions in walking and standing, contrary to the medical evidence, medical source statements and claimants testimony." (Plf.'s Mem. [Docket No. 15], at 22). However, as already noted, the ALJ clearly explained her RFC determination. Her decision

not to include additional hand, walking, and standing restrictions is supported by the state agency consultants' opinions, Plaintiff's reported activities, Plaintiff's many physical exams that showed a minimal loss of functioning, the ALJ's finding that Plaintiff's carpal tunnel syndrome was not a severe impairment, the ALJ's decision to discount Plaintiff's subjective reports of pain and other symptoms, the ALJ's finding that Plaintiff recovered relatively well after her cervical surgeries, and the conservative treatment of Plaintiff's lumbar spine impairment. See, supra. Thus, to the extent that Plaintiff's catchall argument relies on these assertions, it is unpersuasive.

Plaintiff's catchall argument is essentially another invitation for this Court to reweigh the whole of the medical evidence and to come to a different conclusion than the ALJ, which this the court cannot do. See, Milam, 794 F.3d at 983; Woolf, 3 F.3d at 1213. To the extent that Plaintiff again argues that there was also substantial evidence in the record that might have supported additional RFC limitations and a finding of disability, this Court may not reverse the ALJ simply because substantial evidence exists to support an opposite conclusion. See, Milam, 794 F.3d at 983. Nor can this Court substitute its own judgment or findings of fact for those of the ALJ. See, Woolf, 3 F.3d at 1213.

Therefore, this Court finds Plaintiff's catchall argument that the ALJ's RFC determination is not supported by substantial evidence is unpersuasive in light of the record as a whole.

## V. Conclusion

The Court's review of the record as a whole indicates that the ALJ's decision that Plaintiff was not disabled as defined by the Social Security Administration Act was supported by substantial evidence.

Therefore, based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1.    Plaintiff's Motion for Summary Judgment, [Docket No. 14], be **DENIED**; and

2.    Defendant's Motion for Summary Judgment, [Docket No. 16], be **GRANTED**.


Dated: January 22, 2021                                s/Leo I. Brisbois
                                                       Hon. Leo I. Brisbois
                                                       United States Magistrate Judge

## <u>NOTICE</u>

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).